UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANTONIO SAAVEDRA-VARGAS** | CIVIL ACTION |
| **VERSUS** | NO. 18-11461 |
| **BP EXPLORATION & PRODUCTION, INC. ET AL** | SECTION "L" (2) |

### ORDER AND REASONS

Before the Court are two motions by Defendants BP Exploration & Production, Inc. and BP America Production Company ("BP"): (1) a motion to strike Plaintiff's late-designated experts and alternatively (2) a second motion for reimbursement of expert related expenses. R. Docs. 131, 132. Plaintiff Antonio Saavedra-Vargas opposes the motions. R. Docs. 142, 143. BP then filed replies. R. Docs. 147, 149. Having considered the parties' arguments and the relevant law, the Court now rules as follows.

    I.    **BACKGROUND**

This case arises from Plaintiff Antonio Saavedra-Vargas's shoreline clean-up work near Hopedale, Louisiana after the Deepwater Horizon oil spill in the Gulf of Mexico. R. Doc. 1. Plaintiff alleges that during this response work from approximately May 2010 to November 2010, he was exposed to particulate matter that caused him to suffer from chronic bilateral maxillary sinus disease. *Id.* at ¶¶ 20; 26; 39.

Based on the foregoing allegations, Plaintiff filed the instant lawsuit against BP pursuant to the Medical Benefits Class Action Settlement ("MSA") reached in *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, MDL No. 2179. R. Doc. 1 ¶ 3. This allows class members claiming later-manifested physical conditions ("LMPC") diagnosed after April 2012 to

1

sue through the Back-End Litigation Option ("BELO").[1] Liability is not an issue in the BELO cases, but the Plaintiff must prove the diagnosis of a malady and a causal relationship of the malady to the oil spill. *Turner v. BP Expl. & Prod., Inc.*, No. CV 18-9897, 2019 WL 6895577, at *2 (E.D. La. Dec. 18, 2019). Plaintiff seeks to recover damages for pain and suffering, mental anguish, medical expenses,[2] scarring and disfigurement, other economic loss, loss of enjoyment of life, and fear of future medical issues. *Id.* ¶ 28.

To prove what toxicant and what level of that toxicant caused Plaintiff's injury, Mr. Vargas hired Dr. Patricia Williams and Mr. Lee Lemond. In September 2020, Plaintiff issued expert reports from Dr. Williams and Mr. Lemon. According to Dr. Williams, Vargas's chronic sinus disease was caused by his exposure to unsafe levels of particulate matter. In response to these expert reports and the particulate matter theory of causation, BP produced reports from five experts in the fields of toxicology, epidemiology, environmental chemistry, industrial hygiene, and otolaryngology. BP also deposed both Dr. Williams and Mr. Lemond. Finally, at the close of discovery, BP filed a summary judgment motion and a *Daubert* motion directed towards Dr. Williams. R. Docs. 65, 66.

Meanwhile in a similar case involving BELO plaintiffs who claimed to suffer from sinusitis, Judge Rodgers on the Northern District of Florida excluded Dr. Williams's testimony as unreliable and unhelpful under *Daubert* and Federal Rule of Evidence 702(c). *See In re Deepwater Horizon BELO Cases*, No. 3:19-cv-963, 2020 WL 6689212, at *12 (N.D. Fl. Nov. 4, 2020). Subsequently, Plaintiff informed the Court of a recent study that revealed additional oil deposits from the Deepwater Horizon spill.[3] R. Doc. 100. Plaintiff sought to designate one of the study's authors Dr.

---

[1] Plaintiff was diagnosed in 2017.
[2] Plaintiff stipulated that he does not seek damages for past medical expenses. R. Doc. 20.
[3] Berenshtein et al., "Invisible Oil Beyond the Deepwater Horizon Satellite Footprint," Sci. Adv., Feb. 12, 2020, attached as Exhibit D to Plaintiff's motion, R. Doc. 29-7.

Perlin out-of-time so she could conduct a new study to quantify the level and duration of Plaintiff's toxic exposure to help prove medial causation. *See* R. Doc. 63-1 at 12. The Court granted Plaintiff's motion, finding good cause to allow the late expert designation pursuant to Federal Rule of Civil Produce 16(b)(4) in view of this new scientific development. R. Doc. 100. Based on that finding, and guided by the principle of equity, the Court also awarded BP reimbursement of future "attorneys' fees, any expert fees, and costs associated with the designation of Plaintiff's new expert or new expert report." R. Doc. 166 at 5. After multiple continuances due to the ongoing effects of COVID-19, the trial has been moved to October 2021. R. Doc. 115.

On June 9, 2021 Plaintiff produced Dr. Perlin and Dr. Paris-Limouzy's expert report.[4] At the same time, however, Plaintiff abandoned Dr. Williams (toxicology) and Mr. Lemond (environmental science) and added eight additional experts in the areas of toxicology, engineering, psychology, life care planning, economics, occupational and environmental medicine, and otolaryngology.[5] R. Doc. 131-1 at 2-3. Plaintiff also added two new treating physicians, Drs. Ambalu and Mahlon.[6] *Id*. In total, ten of the fourteen proffered experts are new. *Id.*

II.  **PRESENT MOTIONS**

   a. **BP's Motion to Strike Plaintiff's Late Experts**

BP now moves to strike Plaintiff's late expert designations under Federal Rule of Civil Procedure 37(c)(1), arguing that they are inconsistent with the Order's purpose and with Plaintiff's

---

[4] Dr. Paris-Limouzy co-authored the report issued by Dr. Perlin. BP construes this expert as an untimely expert who must be struck. However, considering that she is a co-author to the report that was the very subject of the Court's January 19, 2021 Order and Reasons, the Court considers Dr. Paris-Limouzy to be a timely expert in compliance with the spirit and purpose of the scheduling order modification.

[5] The following new experts were designated: Dr. Gina Solomon (occupational and environmental medicine), Dr. David Greene (otolaryngology), Dr. Ranajit Sahu (engineering), Mr. Michael Klein (engineering), Dr. Andrew Rosen (psychology), Ms. Christiane Pittaluga (life care planning), Dr. James Clark (toxicology), and Dr. Bernard Pettingill (economics).

[6] Plaintiff's failure to previously designate Dr. Ambalu, the only physician to ever diagnose the plaintiff with the LMPC at issue, was highlighted by BP in their motion for summary judgment. *See* R. Doc. 65-1 at 5. Plaintiff appears to have used the continuance to correct that error.

representations regarding the scheduling order modification. *Id.* In November 2020, when Plaintiff moved to reopen his expert deadline, he sought permission to issue a late report from Dr. Perlin which would use new methodology "to quantify the level and duration of Plaintiff's PAH exposure." *See* R. Doc. 63-1 at 12. Yet, BP points out that ten of these experts do not use or even discuss Dr. Perlin's "new science" on which he premised his motion to modify the scheduling. R. Doc. 131-1 at 5. Accordingly, BP requests that the Court strike the late expert designations because (1) Plaintiff has offered no reasonable explanation for the delay, (2) the designations are prejudicial, (3) another continuance would not cure the prejudice, and (4) the witnesses do not offer important testimony. *Id.* at 6 (citing *Barrett v. Atlantic Richfield Co.*, 95 F. 3d 275, 380 (5th Cir. 1996)).

Plaintiff opposes the motion. Plaintiff first argues that he "requested a modification of the Scheduling Order in totality so that the new science could be incorporated and so that Plaintiff could adequately oppose summary judgment." R. Doc. 142. Plaintiff next contends that even if he failed to comply with the spirit and purpose of the amended Scheduling Order as argued by BP, he did not violate its plain meaning.[7] *Id.* at 8-9. Moreover, should the Court find that the expert designations were untimely, Plaintiff maintains that the failure to disclosure his experts was both substantially justified and harmless because (1) "Plaintiff's expert line-up is critical to establishing the elements of a BELO claim" and (2) BP merely has to put forth the same experts as offered in the other pending BELO cases involving Plaintiff's counsel. *Id.* at 15.

### b. BP's Second Motion for Reimbursement of Expert Expenses

Alternatively, BP requests that the Court grant BP reimbursement of three categories of expenses: (1) costs that BP incurred to depose Plaintiff's former experts, Dr. Williams and Mr.

---

[7] The amended Scheduling Order provided that Plaintiffs' expert report deadline was June 29, 2021. R. Doc. 125.

Lemond (2) costs that BP incurred in the form of attorneys' fees to prepare and file a Daubert motion directed against Dr. Williams and a summary judgment motion based on the then-existing causation evidence and (3) future costs that BP will incur to defend against Plaintiff's eleven new experts. R. Doc. 132-1 at 3. These costs would consist of attorneys' fees, future defense expert fees, and deposition-related expenses. *Id.*

Plaintiff opposes the motion, arguing that an order for reimbursement of expert costs would be unjust and overly burdensome because it would lead to the likely dismissal of case due to unreasonable costs incurred by BP. R. Doc. 143 at 11. Plaintiff reiterates his argument that there is an asymmetry of resources between the parties and imposing such financial requirement on Plaintiff would be overly burdensome and onerous compared to BP's "functionally limitless" resources. *Id.* at 12. Moreover, Plaintiff argues that BP's past expert related costs were unnecessary because BP could have moved to exclude Dr. Williams without taking her deposition. *Id.* at 13. Lastly, Plaintiff contends that he cannot adequately oppose BP's motion at this juncture because BP fail to provide the necessary detail and specificity as to the costs and fees, so the Court should defer ruling. *Id.* at 14.

### III.  LAW & ANALYSIS

#### a.  Legal Standard

Federal Rule of Civil Procedure 26(a)(2)(C) requires parties to make expert testimony disclosures "at the times and in sequence that the court orders." Pursuant to Rule 37(c), if a party fails to provide information or identify a witness as required by Rule 26(a), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was "substantially justified" or is "harmless." Fed. R. Civ. P. 37(c). Courts examine the following factors when considering whether to exclude expert testimony: (1) the explanation for

the party's failure to comply with the discovery order, (2) the prejudice to the opposing party of allowing the witnesses to testify, (3) the possibility of curing such prejudice by granting a continuance, and (4) the importance of the witnesses' testimony. *Barrett v. Atlantic Richfield Co.*, 95 F. 3d 275, 380 (5th Cir. 1996).

### b. Discussion

First and foremost, the parties disagree as to whether Plaintiff violated the Scheduling Order's expert report deadline of June 29, 2021. While text of the amended Scheduling Order, which was drafted by the parties and submitted to the Court, does not explicitly limit the number or type of experts, the justification provided to the Court for modifying the Scheduling Order does not support the introduction of Plaintiff's new expert line-up.[8]

The Court granted Plaintiff's motion to modify the Scheduling Order on the grounds that a recent study conducted by Dr. Perlin had revealed additional oil deposits from the Deepwater Horizon spill and thus constituted good cause under 16(b) to allow Plaintiff to designate an expert out-of-time. *See* R. Doc. 100. Plaintiff informed the Court that he retained Dr. Perlin to conduct a new study to quantify the level and duration of Plaintiff's toxic exposure, which would help prove medical causation. R. Doc. 63-1 at 12. During oral argument, Plaintiff's counsel assured the Court that the purpose of the expert report extension was to introduce "new scientific evidence," not to substitute or replace experts. *See Hearing Transcript* (1/5/2021) at p. 28:5-9 ("It's new scientific evidence. It's not like we're taking another toxicologist off the side of the -- you know, taking another toxicologist off the bench and putting them in the game. This is not that. This is not a replacement expert.")

---

[8] *See* Plaintiff's Motion to Enter a New Scheduling Order Based on Newly Discovered Evidence, R. Doc. 63 at 15-16 (arguing that the evolution and development of scientific evidence by Plaintiff's newly retained expert satisfied the "good cause" requirement).

Then, after obtaining relief, Plaintiff replaced his toxicologist, Dr. Williams, with Dr. Clark, who does not use Dr. Perlin's report or the Invisible Oil paper *for any purpose*.[9] In addition, Plaintiff added nine other experts in a variety of fields who likewise do not draw on the alleged "new science" in rendering their opinions. Plaintiff appears to have used this opportunity to designate a whole new line-up of experts that have nothing to do with the "new science" that was the basis of the original motion to modify the Scheduling Order. This goes against both the spirit and purpose of the Court's January 19, 2021 Order and Reasons allowing the modification of the Scheduling Order under Rule 16(b). *See* R. Doc. 100. For this reason, the Court finds that Plaintiff's ten new expert designations were untimely. In order to survive a motion to strike, Plaintiff must therefore demonstrate that the failure to designate his experts in accordance with Rule 26(a)(2)(C) was "substantially justified" or is "harmless" under Rule 37(c).

In making this determination, the Court must consider the four-part test articulated in *Barrett v. Atlantic Richfield Co.*, 95 F. 3d 275, 380 (5th Cir. 1996). As for the first factor, Plaintiff has not provided a sufficient explanation for his failure to designate these witnesses in a timely manner. In essence, Plaintiff argues that new experts were needed to adequately oppose summary judgment after the Fifth Circuit's opinion in *McGill v. BP* "clarified" the burden of proof on causation and Dr. Williams' testimony was excluded by the Northern District of Florida.[10] The Court does not find this explanation persuasive. These reasons would not constitute good cause to

---

[9] Plaintiff does not dispute that Dr. Clark calculates Plaintiff's "dose" of exposure without citing or referencing Dr. Perlin's data. *See* Clark Report (6/9/21).
[10] *See McGill v. BP Expl. & Prod., Inc.,* 830 F. App'x 430, 434 (5th Cir. 2020). In reality, the Circuit found that the expert did not meet any plausible causation standard. Thus, the Circuit did not reach the question of deciding whether the toxic tort standard applies to BELO causation. *Id.* at 434. On November 4, 2020, Judge Rodgers in the Northern District of Florida granted summary judgment in favor of the BP Defendants on general causation for chronic eye, skin and sinusitis conditions, and rejected the opinion of Patricia Williams. *Se*e Order on General Causation, *In re: Deepwater Horizon BELO Cases*, No. 3:19-cv-00963, R. Doc. 97 (N.D. Fla. Nov. 4, 2020).

7

re-open expert discovery in its entirety to give Plaintiff another bite of the apple after Dr. Williams was disqualified. Thus, this factor weighs in favor of excluding the late experts.

The second factor, the potential prejudice to BP, also weighs against Plaintiff. Unlike other BELO cases in other Sections, here Plaintiff had already proffered five experts witnesses and allowed depositions and motion practice to move forward before ever moving to modify the Scheduling Order. Although this prejudice has been somewhat lessened by the award of prospective fees for Dr. Perlin, prejudice remains regarding the ten other experts. Moreover, the third factor supports the exclusion of the experts because this matter has been continued several times and a further continuance would only add to the delay and prejudice. In regard to the fourth factor, Plaintiff has not specified how each expert's anticipated testimony would support his case, though the Court certainly recognizes the importance of expert testimony generally in a toxic tort case such as this.

Ultimately, the Court cannot allow Plaintiff to essentially re-do his expert designations allegedly based on "new science" when the experts he attempts to add do not use or rely on that science. The mere fact that Plaintiff no longer believes his experts are sufficient cannot serve as the basis for allowing late designations. Accordingly, such expert testimony was inconsistent with the premise of Plaintiff's prior motion for relief and with the Court's rationale for granting the motion.

IV. **CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that BP's motion to strike, R. Doc. 131, is **GRANTED** as stated herein. Accordingly, the Court strikes the testimony of the following ten experts: Dr. Gina Solomon, Dr. David Greene, Dr. Ranajit Sahu, Mr. Michael Klein, Dr. Andrew Rosen, Ms. Christiane Pittaluga, Dr. James Clark, Dr. Bernard Pettingill, Dr. Miriam Ambalu, and Dr. Michael Mahlon.

**IT IS FURTHER ORDERED** that BP's second motion for reimbursement of extra expert-related expenses, R. Doc. 132, is **DENIED.**

New Orleans, Louisiana, this 27th day of July, 2021.

_____
UNITED STATES DISTRICT JUDGE